DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | CASE NO. 1:12 CR 244 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | <u>MEMORANDUM OPINION AND</u> |
| | ) | <u>ORDER</u> |
| Christon Jackson, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

I. Introduction

Counsel for the defendant filed a motion to suppress and requested an evidentiary hearing. ECF 18 . The Court conducted the evidentiary hearing, and the transcript of the evidentiary hearing has been filed. ECF 26. Counsel for the government and counsel for the defendant filed post-hearing briefs. Prior to the evidentiary hearing, counsel for the government filed a brief in opposition to the defendant's motion to suppress. ECF 20. Counsel for the government filed a post-hearing brief in opposition to motion to suppress. ECF 31. The defendant filed a post-hearing brief in support of the motion to suppress. ECF 30.

The Court conducted a status conference on August 22, 2012 and announced its decision to deny the motion to suppress and scheduled the trial for September 10, 2012. Additionally, the Court indicated that it would file a brief memorandum opinion denying the motion to suppress. Hence, this brief opinion.

(1:12 CR 244)

## II. Facts and Background

Defendant Christon Jackson (Defendant) has been indicted for possessing a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). The defendant moved to suppress the gun and ammunition found on him during a frisk by Cuyahoga Metropolitan Housing Authority (CMHA) officers. ECF 18.

These events leading up to the seizure of the defendant occurred after dark on April 28, 2012 in the area of Heritage View and Rainbow Terrace Estates in Cleveland, Ohio. This area has been identified by the CMHA Police Department as a high-volume crime area.

### A. Defendant's Position

The defendant contends that he and his brother were returning from a trip to the store. Both of the defendant's hands were full with grocery bags. Along the way, the defendant was approached by a CMHA officer on foot patrol who asked to speak with him. He declined and began to walk away, later fleeing when the officer persisted. Several officers gave chase, and the defendant was apprehended and seized shortly thereafter. The defendant argues that he was illegally seized by the officers and therefore the gun and ammunition found during the illegal seizure should be suppressed. *See* ECF 18.

### B. Government's Position

Two on-duty CMHA police officers (Holderman and Hermensky) identifiable as such, saw two males walking toward them. One of the males was later identified as Keith Jackson (brother of the Defendant). The two males turned around and began walking the other direction after seeing the officers. Keith Jackson rounded a corner, out of sight of the CMHA officers, and

2

(1:12 CR 244)

soon encountered the defendant.  Keith Jackson indicated to the defendant that the two CMHA officers were around the corner.  The defendant then allegedly "went to his mouth."[1]  Two different officers out on a coordinated foot patrol witnessed this encounter as it was out of view of Officers Holderman and Hermensky.

The defendant and Keith Jackson then walked *back* around the corner towards where Keith Jackson had left Officers Holderman and Hermensky.  Officer Holderman approached the two men and asked, "Gentlemen, would you mind talking to me?"  The officers noted that both Keith Jackson and the defendant were looking about nervously at this time.  Keith Jackson then stopped walking, while the defendant kept heading away from the CMHA officers.  Officer Holderman then restated that he would like to speak with the defendant.  At that point, the defendant went from walking to sprinting away from the officers.  *See* ECF 20.

Shortly thereafter, police apprehended the defendant and recovered a loaded Taurus, Model PT740, .40 caliber pistol in the defendant's pants.  The government alleges that the initial stop was consensual but elevated to the level of a *Terry* stop once the defendant fled.

### III.  Law Regarding Consensual Encounters and *Terry* Stops

There are two primary ways in which police officers generally interact with individuals absent probable cause for an arrest: 1) a consensual encounter, or 2) a *Terry* stop.

---

[1] At a July 20, 2012 hearing on the defendant's motion to suppress, the officers testified that individuals who carry narcotics and face the threat of police interaction will often put the narcotics in their mouths, either to hide or consume the drug and avoid arrest.

3

(1:12 CR 244)

### A. Consensual Encounter

Under the consensual encounter arm of the Fourth Amendment, the police can initiate contact with a person without having an objective level of suspicion, during which time the police may "generally ask questions of that individual, ask to examine the defendant's identification, and request consent to search ... as long as the police do not convey a message that compliance with their requests is required." *Florida v. Bostick*, 501 U.S. 429, 435 (1991) (internal citations omitted). *See also United States v. Peters*, 194 F.3d 692, 698 (6th Cir. 1999). In other words, a police officer may confront an individual without reason, for any of the aforementioned purposes. *Id.* However, where an officer approaches an individual pursuant to a consensual encounter, the individual has the right to ignore the police and go about his business. *Florida v. Royer*, 460 U.S. 491, 498 (1983).

### B. *Terry* Stops

In the case of a consensual encounter, an officer does not need to have a "minimal level of objective justification" before merely asking an individual if he is willing to talk to the officer. *Bostick*, 501 U.S. at 435. But "refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure." *Id*. at 437. However, unprovoked flight amounts to the opposite of "going about one's business,"[2] and may provide an officer with reasonable suspicion that criminal activity is afoot. *See Wardlow*, 528 U.S. at 125.

In *Terry*, the Supreme Court held that "an officer may, consistent with the Fourth

---

[2]Unprovoked, "headlong flight – wherever it occurs – is the consummate act of evasion. It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000).

4

(1:12 CR 244)

Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Terry v. Ohio*, 392 U.S. 1, 30 (1968). This "investigatory stop" may include detention or seizure of the individual, allowing the officer to resolve any suspicion regarding the individual's conduct. *Id*. "Reasonable suspicion" is less demanding standard then probable cause and requires a showing considerably less than preponderance of the evidence, but requires "at least a minimal level of objective justification" for making the stop. *United States v. Sokolow*, 490 U.S. 1, 7 (1989). "The concept of reasonable suspicion ... is not readily, or even usefully reduced to a neat set of legal rules, but must be determined by looking to the totality of the circumstances ..." *Id*. at 7-8 (internal quotations omitted).[3]

Factors the courts have considered in making a determination of reasonable suspicion include whether: the individual is present in an area of expected criminal activity, the individual displays nervous or evasive behavior, unprovoked flight, and even the time of day. *See Illinois v. Wardlow*, 528 U.S. 119 (2000); United States v. Carothers, 458 F.3d 459, 467 (6th Cir. 2006). Even if none of these factors alone warrant detention or seizure, each is a relevant contextual consideration in a *Terry* analysis. *See Adams v. Williams*, 407 U.S. 143, 144 (1972); *United States v. Brignoni-Ponce*, 422 U.S. 873, 885 (1975). However, if the officer does not learn facts rising to the level of reasonable suspicion the individual must be allowed to go on his way.

---

[3] The determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior, and the Court must rely on the inferences drawn by judges or law enforcement officers to reach that determination. *See United States v. Cortez*, 449 U.S. 411, 418 (1981).

5

(1:12 CR 244)

*Wardlow*, 528 U.S. at 125.

## IV. Analysis

The officers' grounds for a *Terry* stop in this case parallel the circumstances outlined by the Supreme Court in *Wardlow*. In *Wardlow*, the United States Supreme Court reversed the Illinois Supreme Court holding that a "stop and frisk" conducted by two police officers was lawful and consistent with the Fourth Amendment under *Terry*. *See Wardlow*, 528 U.S. 119. The defendant, Wardlow, fled upon seeing a caravan of police vehicles converge on an area of Chicago known for heavy narcotics trafficking. Before he fled, two police officers observed Wardlow sitting next to a building in the area holding an opaque bag. The officers stated that they pursued Wardlow because he fled without being provoked. The officers apprehended Wardlow and conducted a protective pat-down search for weapons, finding a weapon in the opaque bag. The Supreme Court held that Wardlow's presence in a high-volume crime area pared with his unprovoked flight from the officers met the standard of reasonable suspicion, and therefore, the *Terry* stop was lawful. *See Wardlow*, 528 U.S. at 122-23.

In this case, the Court finds that the defendant was in a high-volume crime area at night. When confronted, the defendant appeared nervous as Officer Holderman spoke to him. He then fled from the scene, apparently without provocation. These facts support a conclusion by the Court that the CMHA officers' *Terry* stop was lawful and is consistent with the Supreme Court's holding in *Wardlow*. Therefore, the Court also concludes that the recovery of the firearm and ammunition was lawful.

(1:12 CR 244)

Accordingly, the defendant's motion to suppress the gun and ammunition (ECF 18) which was found on the defendant during the frisk is DENIED.

IT IS SO ORDERED.

|  |  |
|---|---|
|  August 27, 2012 |  */s/ David D. Dowd, Jr.* |
| Date | David D. Dowd, Jr. |
|  | U.S. District Judge |